UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE WHISNANT

    Plaintiff,                                     Civil Action No. 09-10101

v.                                             HON.  PATRICK J. DUGGAN
                                              U.S. District Judge
                                              HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Darlene Whisnant brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion be DENIED and Plaintiff's motion GRANTED, remanding the case is remanded to the administrative level for further proceedings.

## PROCEDURAL HISTORY

On September 4, 2002, Plaintiff filed an application for DIB, alleging disability as of September 22, 2000 (Tr. 65-67). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on May 24, 2005 in Flint, Michigan before Administrative Law Judge ("ALJ") Bennett S. Engelman (Tr. 229). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Judith Findora (Tr. 232-247, 247-251). On October 31, 2005, ALJ Engelman found that Plaintiff was capable of performing her past relevant work (Tr. 22). On June 28, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed in this Court for judicial review of the final decision on August 24, 2006. Case No. 06-13753. Upon stipulation of parties, the Honorable Gerald E. Rosen reversed and remanded the case to the administrative level on March 2, 2007.

On June 15, 2007, the Appeals Council remanded the case for further fact-finding, directing the ALJ to (1) Evaluate Plaintiff's subjective complaints and state his rationale for the credibility finding consistent with the requirements of SSR 96-7; (2) reconcile discrepancies between the Residual Functional Capacity ("RFC") found in the administrative opinion and the requirements of Plaintiff's past relevant work; and (3) "[O]btain supplemental evidence" from a VE regarding Plaintiff's "occupational base" (Tr. 282-282). ALJ Engelman held a second hearing on January 29, 2008 at which Plaintiff and VE Timothy Shaner, testified (Tr. 310, 313-321, 322-324). On August 28, 2008, ALJ Engelman again found that Plaintiff could perform her past relevant work (Tr 269). On November 7, 2008, the Appeals Council denied review (Tr. 252-254). Plaintiff filed suit in this Court on January 9, 2009.

## BACKGROUND FACTS

Plaintiff, born January 24, 1957, was 49 on the date last insured of September 30,

2006 (Tr. 65, 264). She left school in seventh grade, working previously as an assembler and car porter (Tr. 82, 87). Her application for benefits alleges disability as a result of carpal tunnel syndrome ("CTS"), disc protrusion at C4-5, C5-6, disc herniation and degenerative disease at C4-5, and tendinitis of the right shoulder (Tr. 69).

### A. Plaintiff's Testimony

### 1. August 22, 2005

Plaintiff, a 48-year-old resident of Flint, Michigan, testified that she received a total of approximately $2,500 each month from Workers' Compensation, pension, and supplemental sources (Tr. 232-233). She reported that she formerly worked in assembly related positions, but after work restrictions were imposed, she was reassigned to a position driving vehicles from the end of one assembly line to the beginning of another (Tr. 233-234). Plaintiff alleged that eventually, her back and neck injuries precluded her from the restricted position (Tr. 235). She opined that sitting and standing limitations, along with neck and walking problems, prevented her from working (Tr. 237). Plaintiff estimated that she currently experienced level "9" pain on a scale of 1 to 10 (Tr. 238). She added that lower back pain radiated into her left leg, noting that steroid injections did not improve her condition (Tr. 238-239). Plaintiff alleged that CTS caused gripping problems with both hands (Tr. 239). She indicated that she also experienced elbow problems and headaches (Tr. 240). She reported taking aspirin, Ibuprofen, Vicodin, and Naproxen (Tr. 240).

Plaintiff testified that she lived by herself in a single family home (Tr. 240). She indicated that she relied on her grandson, 12, to clean her house (Tr. 240-241). Plaintiff, noting that she had not driven since her license had been suspended for civil infractions, reported that either her daughter or boyfriend did her grocery shopping and took her to

doctors' appointments (Tr. 241). She estimated that at most, she could stand for 30 minutes, walk three blocks, and lift a gallon of milk (Tr. 242-243).

In response to questioning by her attorney, Plaintiff testified her prescribed medications only partially eased her discomfort (Tr. 244). Noting that she had been prescribed Zoloft recently, Plaintiff alleged that her medications made her "drowsy" and "goofy" (Tr. 244). In addition to problems with fine manipulations as a result of CTS, she alleged difficulty pushing, pulling, and reaching overhead (Tr. 245). Plaintiff reported that her treating physician had advised against surgery, but was planning on administering steroid shots to the wrist (Tr. 245). She opined that back, neck, and head pain precluded even sedentary work with a sit/stand option (Tr. 246).

### 2. January 29, 2008

Plaintiff, denying that she had worked since the 2005 hearing, testified that her income had stayed substantially the same in the past two years (Tr. 314). She indicated that her most recent job as a car/truck porter required her to drive a vehicle from the end of an assembly line to a loading vehicle, then walking back as far as 150 yards to her starting point (Tr. 316-318).

### B. Medical Evidence

#### 1. Treating Sources

In January, 2000, Plaintiff sought treatment for a left wrist injury (Tr. 112). The following month, Plaintiff complained of right shoulder pain (Tr. 152). In March, August, September, and November, 2000, Plaintiff reported symptoms of CTS to the plant medical clinic (Tr. 145-150). October, 2000 imaging studies of the right shoulder were unremarkable (Tr. 172, 209). In December, 2000, John Bitner, M.D. issued a cervical collar in response

to reports of cervical spine and right shoulder problems (Tr. 116-117). The same month, treating notes from the plant clinic indicate that no job was available for Plaintiff, given continued symptoms of CTS (Tr. 144). Also in December, 2000, an MRI of the cervical spine showed stenosis at C5-6 and a disc herniation at C4-5 (Tr. 121, 171, 207). Imaging studies also showed a fractured right elbow (Tr. 120). An MRI of the right shoulder showed "minimal tendinitis" (Tr. 170, 208). In February, 2001, Plaintiff reported that symptoms of CTS were worse (Tr. 143). In March, 2001, Charles Safeley, M.D. opined that Plaintiff's right elbow bursitis was "not large enough" to justify surgery (Tr. 127).

In August, 2002, Plaintiff was referred for physical therapy for shoulder problems (Tr. 131). The following month, clinic notes indicate that several work attempts had been unsuccessful (Tr. 130). Imaging studies of the left elbow performed in November, 2003 showed "mild" epicondylitis (Tr. 204, 206).

In July, 2004, Plaintiff sought emergency treatment for back pain (Tr. 183). She was given Norflex and discharged in good condition (Tr. 183). The same month, imaging studies of the lumbar spine showed "mild degenerative changes" (Tr. 203). In August, 2004, an MRI showed moderate focal spondylostenosis at L3-L4 creating "displacement of the left L3 nerve root" (Tr. 169, 202). Electromyographic studies performed in September, 2004 showed the presence of "mild to moderate" CTS in both wrists (Tr. 168, 211). The following month, Plaintiff received a nerve block at L5-S1 (Tr. 176-177).

In April, 2006, Plaintiff sought emergency treatment for cervical spine pain (Tr. 307-309). She was given a sedative before being released in stable condition (Tr. 308). In December, 2007, Jeffrey Levin, M.D. observed the presence of CTS, as well as right cubital tunnel syndrome and C5-6 radiculopathy (Tr. 298). In January, 2008, he found that Plaintiff

experienced muscle atrophy in the upper extremities and "chronic denervation" in the lower (Tr. 297). An MRI of the lumbar spine showed a 'central disc bulge with minimal compression" (Tr. 303). An MRI of the cervical spine showed stenosis at C5-C6 and C6-C7 (Tr. 306). The same month, Dr. Levin completed a medical source statement on Plaintiff's behalf, stating that she was unable to lift even ten pounds, walk or stand for two hours, or sit for six (Tr. 295). He also found that Plaintiff experienced "severe" pushing and pulling impairments in all extremities (Tr. 295).

### 2. Consultive and Non-examining Sources

In December, 2002 Neil A. Friedman, M.D. performed a consultive physical evaluation of Plaintiff on behalf of the SSA (Tr. 153). Plaintiff alleged right arm and right upper back muscle spasms, but denied left side problems (Tr. 153). She reported smoking one pack of cigarettes per day and consuming a 12-pack of beer each week (Tr. 153). She denied illicit drug use (Tr. 153). She demonstrated normal cervical and upper extremity ranges of motion except for right shoulder abduction (Tr. 154, 156-157). Dr. Friedman observed a "grossly normal gait" (Tr. 155). Plaintiff demonstrated no difficulty undressing or redressing independently (Tr. 155). She was able to perform a variety of manipulative and postural functions without difficulty (Tr. 158).

The following month, a non-examining Physical Residual Functional Capacity Assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; walk, stand, or sit for approximately six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 161). Plaintiff's ability to push/pull in the upper extremities was deemed limited by CTS as well as neck and shoulder pain (Tr. 161). Plaintiff was limited to occasional climbing and stooping, but was found able to balance,

kneel, crouch, and crawl on a frequent basis (Tr. 162). Her manipulative limitations consisted of frequent (as opposed to *constant*) reaching, handling, and fingering with the right hand (Tr. 163). The Assessment found the absence of visual or communicative limitations, but found that Plaintiff should avoid even moderate exposure to vibration (Tr. 163-164). The Assessment concluded by stating that Plaintiff's allegations of limitation were only partially supported by the medical evidence (Tr. 165).

In June, 2005, Matthew P. Dickson, Ph.D., performed a consultive psychological examination of Plaintiff, noting that she currently took Zoloft, Estrogen, Vicodin, and Prevacid (Tr. 212). Plaintiff, reporting that she dropped out of school in seventh grade, nonetheless characterized herself as a "'pretty smart kid'" (Tr. 212). She demonstrated an appropriate affect, reporting good interaction with both friends and family (Tr. 212). She indicated that she spent her waking hours watching television and smoking (Tr. 213). She admitted to losing her driver's license after failing to pay fines for civil infractions, but noted that she could count money and pay her bills (Tr. 213). Dr. Dickson opined that Plaintiff's "psychological condition would mildly impair her ability to perform work related activities" (Tr. 214). He assigned Plaintiff a GAF of 58[1] (Tr. 214). Psychological testing showed average to low-average intelligence, depression, and anxiety (Tr. 218-219). Dr. Dickson found that Plaintiff's ability to understand and carry out workplace instructions was unimpaired, but that she experienced "slight" limitations in her ability to interact with the public or deal with workplace changes (Tr. 221-222).

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR* ) (4th ed.2000).

### C.  Vocational Expert Testimony

#### 1.  August 22, 2005

VE Judith Findora classified Plaintiff's former work as a car porter as unskilled at the light exertional level[2]  (Tr. 109, 247).  The ALJ posed the following hypothetical question:

> "Let's, for argument's sake, assume a person is limited to light work as far as the lifting requirements and the standing or walking, but that this person would need the opportunity to alternate positions at will, so they could be, you know, seated the majority of the day.  Assume that there's only to be – there's to be only occasional use of the bilateral hands for gripping, grasping, wrist movements, that there should only be occasional pushing or pulling of the upper – of the upper extremities bilaterally, and the lower extremity on the left side.  There should only be occasional climbing or stooping, and no vibratory tools.  In your opinion, would such an individual be capable of returning to any past relevant work?

(Tr. 248).  The VE replied that if the individual needed to change positions at will, the position of car porter could not be performed due to the sitting requirements of the position (Tr. 249).

#### 2.  January 29, 2008 Hearing

Consistent with VE Finora's prior testimony, VE Timothy Shaner classified the car porter position as exertionally light and unskilled (Tr. 322). He stressed that although the position would involve both sitting and standing, the individual would be unable to change positions at will (Tr. 322).  In response to questioning by Plaintiff's attorney, the VE stated that the need to miss more than one day of work each month would generally preclude

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

competitive employment (Tr. 323). He testified further that the need to lie down or nap at unpredicted times would also preclude all work (Tr. 323).

### D. The ALJ's Decisions

#### 1. October 31, 2005

ALJ Engelman found that Plaintiff experienced the severe impairments of degenerative disc disease of the cervical and lumbar spine, right elbow bursitis, CTS, and an adjustment disorder, finding however that none of the conditions met or medically equaled "one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). He found that Plaintiff retained the following residual functional capacity ("RFC"):

> "to perform a significant range of light work activity that allows for alternating between sitting and standing positions at will. However, the claimant should avoid work activity that requires constant use of the hands"

(Tr. 22). The ALJ found Plaintiff capable of performing her past relevant job as a car porter (Tr. 21-22).

The ALJ supported his determination by noting that Plaintiff's allegations of disability were "not totally credible" (Tr. 22). He cited Dr. Friedman's December, 2002 observation that Plaintiff exhibited an essentially normal gait and range of joint motion (Tr. 18). The Again citing Dr. Friedman's findings, the ALJ also noted that Plaintiff was able to perform manipulative functions without difficulty (Tr. 19).

#### 2. August 28, 2008 (Following remand by Appeal Council)

Consistent with his October, 31, 2005 findings, ALJ Engelman found that Plaintiff experienced the severe impairments of degenerative disc disease of the cervical and lumbar spine, right elbow bursitis, CTS, and an adjustment disorder, finding that none of the

conditions met or medically equaled "one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 264-265). He found that Plaintiff retained the following RFC:

> "to perform a significant range of light work activity that allows for alternating between sitting and standing positions[3]. However, the claimant should avoid work activity that requires constant use of the hands"

(266). The ALJ again concluded that Plaintiff was capable of performing her former work as a car porter (Tr. 268-269).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*,

---

[3]This RFC is in all respects identical to the previous one except that here, the ALJ omit the modifier "at will" to "sitting and standing positions" (*see* Tr. 22).

884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff contends first that the ALJ did not comply with the Appeal Council's June 15, 2007 order directing him to state a rationale for his credibility determination. *Plaintiff's Brief* at 6-8, *Docket #11*(*citing* Tr. 283).  She points out that the August 28, 2008 administrative opinion's credibility determination uses the same "standard canned language" contained in the original opinion. *Id.* at 7 (*citing* Tr. 20-21, 268).  Next, Plaintiff argues that the ALJ's hypothetical question to the VE did not fully account for her limitations, thereby invalidating the VE's testimony. *Id.* at 8-9.  On a related note, she argues that the ALJ's

failure to acknowledge Dr. Levin's 2007 and 2008 findings constitutes reversible error. *Id.* at 9-14.

### A. The June 15, 2007 Remand Order

As discussed above, the Appeals Council remand order of June 15, 2007 directed the ALJ to 1). provide a rationale for his credibility determination consistent with the requirements of SSR 96-7p 2). reconcile discrepancies between the RFC and the requirements of Plaintiff's past relevant work and 3). obtain additional VE testimony (Tr. 282-283). Plaintiff does not dispute that the ALJ addressed at least the procedural aspects of the second and third directives but argues that he ignored the first. *Plaintiff's Brief* at 6-7.

The two-part credibility analysis, governed by SSR 96-7p, requires that "[f]irst, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). Second, the ALJ must considered Plaintiff's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms" of his condition. *Id.* C.F.R. 404.1529(c)(3); 416.929(c)(3) lists the factors to be considered in making a credibility determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Contrary to Plaintiff's argument, I note that the ALJ's 2008 opinion contains a lengthy

discussion of his reasons for rejecting Plaintiff's allegations of disability. Citing Plaintiff's medical records, he noted that right elbow bursitis did not create "mechanical problems or a limited range of motion" (Tr. 266). He again cited Dr. Friedman's December, 2002 observation that Plaintiff was able to walk, stoop, and squat without difficulty and perform a number of manipulative functions without difficulty (Tr. 266-267). The ALJ also noted that Plaintiff's claim was undermined by the fact that her lower back problems had been treated conservatively (Tr. 267). In regard to allegations of non-physical impairments, the ALJ cited June, 2005 intelligence testing results showing scores within average range (Tr. 368). Because the ALJ complied with the procedural requirements of the June, 2007 Appeals Council order, remand is not appropriate on these grounds.

### B. The Hypothetical Question/RFC

Plaintiff argues next that the ALJ's hypothetical question to the VE did not account for her full degree of limitation. *Plaintiff's Brief* at 8-9. She also notes that the revised RFC, changing "sitting and standing positions at will," in the original RFC to simply "sitting and standing positions" in the latter, did not address her need to sit at unexpected times (Tr. 22, 266).

This argument is based on the premise that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments"(internal citations omitted). *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987);*Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). However, in contrast to a Step Five determination wherein a VE is required in cases involving non-exertional impairments, a ALJ is permitted but not

required to use a VE in making a Step Four determination. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *See also Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814 (3rd Cir. 2003)("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). Therefore, a hypothetical question's deficiencies, with nothing more, would not invalidate a Step Four finding that a claimant could perform her former work.

However here, because the ALJ explicitly stated that the Step Four conclusion was based on the VE's testimony, the deficiencies in the hypothetical question constitute reversible error. (Tr. 267). Indeed, the ALJ Engelman's failure to account for Plaintiff's psychological impairments in crafting the hypothetical question taints the VE's testimony that Plaintiff could perform her past relevant work. Both the hypothetical question and RFC omit any reference to Plaintiff's limitations as a result of depression, despite the fact that the ALJ himself found that depression was a severe impairment at Step Two. More obviously, while he found at Step Three that Plaintiff did not meet the criteria for disability based on depression, he found that the affective disorder created *moderate* deficiencies of concentration, persistence, and pace (Tr. 265).

Despite the ALJ's acknowledgment of a moderate concentrational impairments at Steps Two and Three, the hypothetical question and RFC were bereft of corresponding limitations. While "a hypothetical question need not incorporate a listing of the claimant's medical conditions, the vocational expert's testimony, to be reliable, must take into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue,* 263 Fed.Appx. 469, 476 (6th Cir. 2008)(*citing Webb v. Comm'r of Social Sec*., 368 F.3d 629, 632-33 (6th Cir.2004). The psychological limitations as found at both Step Two and Three of the finding must be acknowledged in the hypothetical question. The failure

-14-

to do so constitutes reversible error. *See Tinker v. Astrue* 2009 WL 3064780, *9 (E.D.Mich 2009)(Edmunds, J.).

In contrast, I agree with Defendant's argument that the revised hypothetical question/RFC omissioin of the need to change positions *at will* does not present grounds for reversal. *Defendant's Brief* at 13, *Docket #16*. The ALJ's finding that although Plaintiff needed to alternate positions, she did not need to change positions *at will* is supported by substantial evidence as discussed, *supra,* in the credibility determination.[4]

### C. The Treating Physician Analysis

Plaintiff argues that the ALJ erred by failing to address Dr. Levin's January, 2008 opinion that she was incapable of even sedentary work. *Plaintiff's Brief* at 9-12 (*citing* Tr. 295). Citing *Wilson v. Social Security,* 378 .3d 541 (6th Cir. 2004), she contends that the failure to discuss Dr. Levin's findings constitutes reversible error. *Plaintiff's Brief* at 12. In response, Defendant points out that Dr. Levin did not begin treating Plaintiff until over a year subsequent to the September 30, 2006 expiration of benefits. *Defendant's Brief* at 12. He contends that the neurologist's January, 2008 assessment of Plaintiff's work abilities was irrelevant to her condition prior to the date last insured. *Id.*

The Sixth Circuit has held that in determining the weight accorded to a treating physician, the ALJ must consider "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. §

---

[4]However, consistent with the section **C.** findings, *infra,* Dr. Levin's later treating records may support a more restrictive RFC.

404.1527(d)(2)). An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 547. While an ALJ need not consider post-expiration of benefits opinions unrelated to the claimant's status during the insured period, the fact that Dr. Levin did not treat Plaintiff until December, 2007 does not automatically render his opinion irrelevant to her pre-September 30, 2006 condition. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)(*citing Martonik v. Heckler,* 773 F.2d 236, 240-41 (8th Cir. 1985))("evidence of medical condition after insurance cutoff must be considered to the extent it illuminates claimant's health before that date")(internal punctuation omitted).

A review of Dr. Levin's post-expiration appraisal and treating notes show that the material contains information possibly relevant to Plaintiff's earlier condition. First, his treating notes contain numerous references to her long-term medical and vocational history (Tr. 302). If nothing else, Dr. Levin would appear well-versed with Plaintiff's long-term impairments and thus qualified to assess her condition prior to his December, 2007 examination. Notably, his January, 2008 assessment of Plaintiff's residual abilities states that she experienced the assessed limitations "since 2001" (Tr. 295).

Despite this material's possible relevance to Plaintiff's condition before September 30, 2006, the administrative opinion refers to Dr. Levin's treating records by exhibit number only, stating that "[a]dditional medical evidence through the date the claimant was last insured for disability does not establish any significant decline/change in the claimant's condition or level of functionin (Exhibits 13F and 14F)" (Tr. 268). However, the referenced records (Exhibits 13 and 14) contain only records created *after* the expiration of benefits. This finding, confusing on its face, can be interpreted in one of the two following ways:

> 1) 'Although the latter records may suggest a worsening of Plaintiff's condition, the pre-September 30, 2006 records support a non-disability

finding.'

(or)

2) 'Records created after the expiration of benefits confirm that Plaintiff's condition remained static' at least through September 30, 2006.'

Both interpretations would be consistent with the ALJ's ultimate finding that Plaintiff did not experience disability level impairment – at least not before the expiration of benefits.

However, because the ALJ's statement suggests that he relied on *pre*-expiration records for this finding, interpretation 1) would suggest that he misread the date of Dr. Levin's records or 2) he overlooked Dr. Levin's assessment of Plaintiff's residual abilities in concluding that Plaintiff's condition remained unchanged. In any case, Dr. Levin's statement that his assessment was applicable to Plaintiff's pre-September 30, 2006 condition, along with ambiguities in the ALJ's findings, require both a remand for clarification and an analysis of the treating physician's opinion consistent with *Wilson, supra*. Based on the current administrative record, the Court cannot discern whether the ALJ rejected, misread, or simply overlooked Dr. Levin's findings. *See   Lowery v. Commissioner, Social Sec. Administration,*  55 Fed.Appx. 333,  339,  WL 236419, 5 (6th Cir. 2003)(*quoting Diaz v. Chater,* 55 F.3d 300, 306 (7th Cir.1995) (An ALJ  "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning").

In closing, I note that the above discussed errors, while critical, do not suggest that Plaintiff is automatically entitled to benefits. Upon remand, the ALJ may or may not find that substantial evidence supports a non-disability finding. Accordingly,  the case should be remanded for further proceedings consistent with Sections **B.** and **C.** of this analysis. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's motion be DENIED and Plaintiff's motion GRANTED, remanding the case to the administrative level for further proceedings.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/R. Steven Whalen
                                                  UNITED STATES MAGISTRATE JUDGE

Dated:  December 29, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 29, 2009.

s/Susan Jefferson
Case Manager